UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CATHERINE DAIL,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>25 Cr.<br><br>25 CRIM 477 |

## COUNT ONE
### (Wire Fraud)

The Grand Jury charges:

### Overview of the Scheme

1. From at least in or about November 2018 through at least in or about March 2024, CATHERINE DAIL, the defendant, engaged in a scheme to defraud clients, investors, and art dealers of funds that she used to pay for personal and business expenses and debts.

2. At all relevant times, DAIL was an art dealer specializing in 19th and 20th Century artworks. In exchange for commission, DAIL purchased and sold artworks on behalf of clients and sold artworks on consignment. For many years, up until in or about the spring of 2021, DAIL's art business was based in Manhattan, at which point DAIL moved her business to Los Angeles, California.

3. Starting in or about November 2018, CATHERINE DAIL, the defendant, began engaging in a scheme to defraud clients, investors, and other art dealers who consigned artworks to her. In connection with transactions for the purchase and sale of artworks or loans to her art dealership business, DAIL made material misrepresentations regarding her intended use of funds and her ownership and control of various artworks. She then misappropriated client and investor

funds to pay, among other things, personal expenses and debts that she and her business owed. DAIL's scheme involved over $2 million in fraudulent transactions and at least six victims.

Victim-1 and Victim-2

4. In or about December 2019, Victim-1 and Victim-2 consigned four artworks with CATHERINE DAIL, the defendant, which DAIL agreed to sell on their behalf. The artworks included a painting by Georgia O'Keeffe (the "O'Keeffe Painting"), and three paintings by Stuart Davis ("Davis Painting-1", "Davis Painting-2", and "Davis Painting-3"). At that time, DAIL took custody of the four paintings, and DAIL agreed to sell them for specified minimum amounts.

5. Later in or about December 2019, CATHERINE DAIL, the defendant, sold Davis Painting-1 to an art gallery in Manhattan, which paid DAIL for Davis Painting-1. The amount paid to DAIL was less than the amount for which DAIL agreed to sell Davis Painting-1 on behalf of Victim-1 and Victim-2. DAIL never remitted the proceeds of the sale of Davis Painting-1 to Victim-1 and Victim-2. Instead, DAIL diverted the proceeds to her personal expenses.

6. In or about January 2020, CATHERINE DAIL, the defendant, sold the O'Keeffe Painting to an art gallery in Manhattan, which paid DAIL for the O'Keeffe Painting. DAIL did not remit the proceeds of the sale of the O'Keefe Painting to Victim-1 and Victim-2. Instead, DAIL diverted the proceeds to pay a debt owed to Victim-4 for a loan, as described further below.

7. In or about January 2020, CATHERINE DAIL, the defendant, paid Victim-1 and Victim-2 the amount owed to them in connection with the sale of the O'Keeffe painting using money that she induced Victim-4 to loan to her by false misrepresenting that the loan proceeds would be used to purchase new art for investment.

8. In or about March and April 2021, CATHERINE DAIL, the defendant, sold Davis Painting-2 and Davis Painting-3 to an art gallery in New Mexico, which paid DAIL for the

paintings. The amount paid to DAIL was less than the amount for which DAIL agreed to sell Davis Painting-2 and Davis Painting-3 on behalf of Victim-1 and Victim-2. DAIL never remitted the proceeds of the sale of Davis Painting-2 and Davis Painting-3 to Victim-1 and Victim-2. Instead, DAIL diverted the proceeds to repay a debt owed to Victim-3 for a purported art investment, as described further below, and to pay personal expenses.

9. Over the next several years, Victim-1 and Victim-2 repeatedly inquired with CATHERINE DAIL, the defendant, regarding the status of DAIL's efforts to sell Davis Painting-1, Davis Painting-2, and Davis Painting-3. On multiple occasions, including after DAIL sold all three paintings by April 2021, DAIL falsely told Victim-1 and Victim-2 that DAIL was still searching for buyers for the paintings, that she still had custody of the paintings, and that she was close to closing a sale. DAIL continued making these misrepresentations to Victim-1 and Victim-2 until at least March 2024.

Victim-3

10. In or about February and March 2021, CATHERINE DAIL, the defendant, fraudulently induced Victim-3, an owner of a Manhattan art gallery, to invest approximately $110,000 in a purported 50% interest in a painting by Robert Burns Motherwell (the "Motherwell Painting").

11. CATHERINE DAIL, the defendant, falsely represented to Victim-3 that DAIL had the opportunity to purchase the Motherwell Painting. Victim-3 accepted DAIL's offer to pay $110,000 for a purported 50% ownership interest in the Motherwell Painting, and Victim-3 wired the funds to DAIL on or about March 5, 2021.

12. CATHERINE DAIL, the defendant, did not use Victim-3's payment to purchase the Motherwell Painting. Instead, DAIL used the funds to pay personal expenses. DAIL never

purchased the Motherwell Painting and never remitted any funds to purchase the Motherwell Painting.

13. In or about March 2021, after sending payment, Victim-3 became suspicious and questioned CATHERINE DAIL, the defendant, regarding the transaction. DAIL falsely told Victim-3 that DAIL had sent the funds to pay for the Motherwell Painting and sent Victim-3 a doctored screenshot of a wire transfer purporting to show DAIL had wired the funds to purchase the Motherwell Painting. DAIL's bank records, however, show DAIL never sent such a wire.

14. On or about April 1, 2021, CATHERINE DAIL, the defendant, repaid Victim-3 for Victim-3's purported investment in the Motherwell Painting using the proceeds of the sale of Davis Painting-2 and Davis Painting-3, which, as described above, DAIL owed to Victim-1 and Victim-2.

### Victim-4

15. In or about November 2018, CATHERINE DAIL, the defendant, fraudulently solicited a $250,000 loan from Victim-4 to purportedly invest in a painting by John Singer Sargent (the "Sargent Painting"). Victim-4 and DAIL entered in a written contract specifying the loan was solely for the purpose of purchasing the Sargent Painting. On or about December 4, 2018, Victim-4 paid DAIL $250,000.

16. CATHERINE DAIL, the defendant, did not use Victim-4's $250,000 loan to purchase the Sargent Painting. Instead, DAIL used the money to pay various personal and business expenses.

17. CATHERINE DAIL, the defendant, never purchased the Sargent Painting. DAIL made multiple misrepresentations to Victim-4 throughout 2019 that DAIL and Victim-4 owned the Sargent Painting, that she was working on selling the painting, and that a sale was imminent.

18. On or about January 2, 2020, CATHERINE DAIL, the defendant, repaid Victim-4 $325,000, representing the loan principal and a 30% return, using the proceeds from the sale of the O'Keeffe Painting, which, as described above, were owed to Victim-1 and Victim-2.

19. In or about January 2020, CATHERINE DAIL, the defendant, fraudulently induced Victim-4 to issue an additional $250,000 loan based on false representations that the funds would be used to acquire additional artwork. On or about January 13, 2020, Victim-4 paid DAIL $250,000. DAIL did not use these funds to invest in new art. Instead, as described above, DAIL primarily used the second loan from Victim-4 to pay Victim-1 and Victim-2 the money DAIL owed them from the sale of the O'Keeffe Painting.

20. On or about April 8, 2021, CATHERINE DAIL, the defendant, paid Victim-4 approximately $65,050, representing the investment return on Victim-4's second $250,000 loan, issued to DAIL on or about January 13, 2020, as described in the paragraph above. DAIL funded the payment to Victim-4 using the proceeds from the sale of Davis Painting-2 and Davis Painting-3, which, as described above, were owed to Victim-1 and Victim-2.

21. CATHERINE DAIL, the defendant, did not repay the principal of the second $250,000 loan to Victim-4. Instead, on or about March 25, 2021, Victim-4 agreed DAIL could keep the $250,000 as a third loan based on DAIL's fraudulent misrepresentation that DAIL would reinvest the $250,000 in artwork. The written contract between DAIL and Victim-4 stated the $250,000 was to "be used solely for the purpose of acquiring Art" and that within one year, DAIL would pay $300,000 to Victim-4, representing a 20% return on the loan. DAIL never used any funds from Victim-4 to purchase artworks. After the contract came due in or about March 2022, DAIL falsely represented to Victim-4 that she was still working on selling artwork that she had purchased using the loan proceeds. DAIL never repaid Victim-4 for the loan.

### Victim-5

22. Between in or about July through September 2021, CATHERINE DAIL, the defendant, fraudulently induced Victim-5, the owner of an art gallery in Manhattan, to consign to DAIL nine photographs by Ralston Crawford (the "Crawford Photographs"). DAIL took custody of the Crawford Photographs.

23. CATHERINE DAIL, the defendant, sold three of the Crawford Photographs to Victim-6 in or about July or August 2021. DAIL never remitted the payment from the sale of the three Crawford Photographs to Victim-5. DAIL, instead, used the funds from the sale of the three Crawford Photographs to pay for personal expenses.

24. Throughout 2021 and 2022, Victim-5 requested that CATHERINE DAIL, the defendant, pay for the Crawford Photographs or return them. In or about April 2022, DAIL promised to Victim-5 to return the Crawford Photographs or send payment by on or about June 16, 2022. DAIL, however, did not disclose that she had sold three of the Crawford Photographs, did not return or pay Victim-5 for the Crawford Photographs, and continued to market the remaining six Crawford Photographs for sale until at least in or about 2024.

### Victim-6

25. In or about July 2021, CATHERINE DAIL, the defendant, fraudulently induced Victim-6 to loan DAIL $45,000, which, according to the written loan agreement, was to be used "as working capital for Catherine Dail Fine Art" *i.e.*, DAIL's art business, for a period of one year. On or about July 21, 2021, Victim-6 paid DAIL $45,000.

26. DAIL did not use Victim-6's $45,000 loan for her art business. Instead, DAIL used the funds primarily to pay her personal expenses. DAIL also used approximately $18,000 of the loan funds to purchase a painting that DAIL had falsely represented she owned at the time she and

Victim-6 entered into the loan agreement and that DAIL falsely represented in the loan agreement to have available as collateral for the loan.

27.   CATHERINE DAIL, the defendant, never repaid Victim-6 for the loan.

### Statutory Allegations

28.   From at least in or about November 2018 through at least in or about March 2024, in the Southern District of New York and elsewhere, CATHERINE DAIL, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DAIL, an art dealer, made false statements to clients, investors and art dealers regarding their purported investments in and sales of artworks, diverted proceeds of the sales of their artworks and investments in artworks to pay for other expenses and debts, , and sent and received and caused others to send and receive, emails and other electronic communications, phone calls, and wire transfers, to and from the Southern District of New York and elsewhere, in furtherance of the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
### (Mail Fraud)

The Grand Jury further charges:

29.   The allegations contained in paragraphs 1 through 27 of this Indictment are repeated and realleged as if fully set out herein.

30.   From at least in or about November 2018 through at least in or about March 2024, in the Southern District of New York and elsewhere, CATHERINE DAIL, the defendant,

knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, placed in a post office and authorized depository for mail matter, a matter and thing whatever to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing whatever to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom, such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, to wit, DAIL engaged in the scheme described above, and in furtherance of the scheme, caused artworks to be sent via FedEx to and from Manhattan.

(Title 18, United States Code, Sections 1341 and 2.)

## FORFEITURE ALLEGATIONS

31. As a result of committing the offenses alleged in Counts One and Two of this Indictment, CATHERINE DAIL, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_/s/_

JAY CLAYTON
United States Attorney